IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK K. PASOUR, ESQUIRE | : | |
| 1529 Green Street, Apt. C | : | |
| Philadelphia, PA 1913 | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 13-cv-02258 (RB) |
| | : | |
| THE PHILADELPHIA HOUSING AUTHORITY | : | |
| 12 South 23rd Street | : | |
| Philadelphia, PA 19103 | : | |

**AMENDED COMPLAINT**
**Jury Trial Demanded**

Plaintiff, Frederick K. Pasour, Esquire ("Plaintiff" or "Pasour"), by and through his attorneys, Spector Gadon & Rosen, P.C., files this Amended Civil Complaint against The Philadelphia Housing Authority ("PHA" or "Defendant" or the "Authority") and alleges as follows:

**PRELIMINARY STATEMENT**

1.     This lawsuit arises from the events and publicity surrounding the PHA's suspension and termination of Plaintiff's employment which originated from the willful, unfounded, irresponsible and malicious statements made about Plaintiff by the former Mayor of Philadelphia and then PHA Chairman John Street ("Chairman Street") that accused Plaintiff of engaging in unethical conduct in connection with the alleged unlawful activities of Carl R. Greene ("Greene"), the former Executive Director of PHA.

2.     The continuing effect of Chairman Street's statements, that were broadly disseminated in repeated news stories, led directly to Plaintiff's

demotion as the head of Human Resources, his administrative suspension months later,  the termination of his employment as General Labor and Employment Counsel and the perception by the general public and legal community at large that Plaintiff had engaged in unlawful and unethical behavior in carrying out his responsibilities as a lawyer representing the Authority.

3.    Based upon these actions which caused damage to Mr. Pasour's professional and personal reputation, Plaintiff asserts claims against his former employer pursuant to 42 U.S.C. §1983 and the 5th and 14th Amendments to the United States Constitution for deprivation of his liberty interest and his reputation without due process of law and asserts claims for defamation and invasion of privacy/false light.

4.    Plaintiff seeks damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), including, but not limited to, compensatory and punitive damages against the PHA and/or any other relief the Court deems appropriate.

**THE PARTIES**

5.    Plaintiff, Frederick K. Pasour is an adult individual residing at 1529 Green Street, Apartment C, Philadelphia, PA 19130.

6.    Prior to the disparagement affected by the PHA, its Chairman and its Executive Director, Plaintiff was a well-respected labor and employment attorney who has been a member of the Pennsylvania Bar for 18 years.

2

7.    At all times relevant to this Complaint, Plaintiff was employed by the PHA as a labor and employment attorney, and immediately prior to his termination, he held the title of General Counsel of Labor and Employment.

8.    Defendant PHA, was established in 1937 under the laws of the Commonwealth of Pennsylvania to develop, acquire, lease and operate affordable housing programs for low and moderate income residents of the City of Philadelphia.

9.    PHA is the fourth largest public housing authority in the United States and the largest landlord in Pennsylvania.

10.    With an operating budget of $371 million provided by rental payments and subsidies from the United States Department of Housing and Urban Development and a staff of approximately 1400 full time employees, PHA provides housing assistance to nearly 80,000 Philadelphia residents.

11.    PHA is governed by a Board of Commissioners appointed by the Mayor of Philadelphia and is led by its Executive Director who reports directly to the Board and has full responsibility for all PHA operations.

## JURISDICTION AND VENUE

12.    Jurisdiction is invoked pursuant to the provisions of 42 U.S.C. §1983.

13.    All actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant that resides and conducts its business within its jurisdictional limits.

14.     Venue before this Court is therefore proper pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

## FACTUAL BACKGROUND

### Plaintiff's Employment at the PHA

15.     Plaintiff became employed at the PHA on June 3, 2003 as Labor Counsel reporting to Cybil H. Bryant, the General Manager of Human Resources.

16.     At the time of his hire, Carl Greene was employed as PHA's Executive Director.

17.     As Labor Counsel, Plaintiff's duties included the supervision of labor and employment matters being handled by outside counsel who had been appointed through PHA's legal department, supervision of the PHA's EEO office and supervision of the worker's compensation program.  Plaintiff was also responsible for providing advice to his supervisors regarding labor and employment matters and his supervisors were responsible, in turn, for providing this advice to PHA's Executive Director, PHA's Executive Staff and the Board of Commissioners.

18.     In 2005, while Plaintiff's title was changed to Director of Labor and Employment, his duties remained the same.

19.     At the time, Ms. Bryant continued serving as the General Manager of Human Resources and, starting in 2006, she also served as General Counsel.

20.     Ms. Bryant's employment at PHA ended in April 2007 and, upon her departure, Plaintiff also had direct responsibility for enforcement of PHA's sexual harassment policy.

21.     Thereafter, in February 2008, Plaintiff was promoted to the position of Acting General Counsel for Labor and Employment at PHA and he served as the General Manager of Human Resources until he was demoted shortly before the termination of his employment.

22.     His title was formally changed to General Counsel for Labor and Employment in December 2008.

23.     In that capacity, Plaintiff's duties primarily remained the same and he continued to be responsible for supervising and managing the Labor and Employment cases at PHA, supervising the EEO office and the worker's compensation program and advising management on personnel issues as well.

24.     Plaintiff reported directly to Carolyn Carter ("Carter") who was the Assistant Executive Director of Operations at the PHA and also reported to Diane Rosenthal ("Rosenthal") who was the Assistant Executive Director of Finance and Administration at the PHA.

25.     As the General Counsel for Labor and Employment, Plaintiff did not attend pre-board meetings or executive sessions and had no authority to present issues to the Board at any time during his employment.

26.     Throughout his entire tenure of employment with the PHA, Plaintiff had an exemplary performance record and was never subjected to any disciplinary actions.

## **Carl Greene and the Sexual Harassment Complaints**

27.     In August 2010, a series of allegations regarding Carl Greene were broadly reported in the newspapers, television broadcasts and radio which were both related and unrelated to his employment.

28.     With respect to the allegations related to his employment, it was reported that a number of former PHA employees allegedly made sexual harassment claims against Mr. Greene and that three of these sexual harassment claims dating back to 2004 were settled by the PHA's insurer.

29.     Following these daily media reports, Chairman Street targeted Plaintiff as a scapegoat for his own apparent inability to monitor the actions of Mr. Greene, maliciously defamed Plaintiff and portrayed him in a false light.

30.     Specifically, during a public meeting held on August 26, 2010, Chairman Street falsely accused Plaintiff of engaging in an unlawful conspiracy to conceal the sexual harassment charges and settlement from the Board, thereby allegedly failing in his ethical and legal responsibility to

31.     Chairman Street willfully promulgated these false and malicious accusations to the newspaper, television and radio media solely to protect himself from complicity in his own failure to advise the appropriate HUD representatives and his fellow Board members, despite the fact that he knew that Plaintiff had no responsibility or authority to report any matters to the PHA Board, and for the sole purpose of deflecting any fault that would be directed at him personally for not taking any action regarding the issues that led to Mr. Green's discharge.

32.     Moreover, after publicly announcing that the PHA Board was initiating an "immediate, thorough and independent investigation" regarding the alleged sexual harassment allegations against Mr. Greene, Chairman Street leaked an unauthored investigative report that was written at his direction and authored in relevant part by him which falsely accused Plaintiff of engaging in a conspiracy to cover up Mr. Greene's averred sexual harassment in violation of Plaintiff's legal and ethical responsibilities.

33.     That action was affected solely to protect Chairman Street from personal criticism for failing in his own oversight responsibilities.

34.     As a direct result of Chairman Street's action, the investigative report appeared in the print and news media on or about September 23, 2010.

35.     Following the dissemination of the investigative report and in furtherance of the goal of denigrating Plaintiff to cover-up Chairman Street's complicity, Plaintiff was replaced in his responsibilities as the head of human resources by Executive Director Michael Kelly ("Kelly") who replaced him with a woman working at PHA pursuant to a H-1-B visa, Audrey Lim ("Lim").

**Mr. Pasour's Suspension and Termination**

36.     On February 4, 2011, Plaintiff was informed by Michael Kelly during a meeting that he was being suspended from employment with pay by the PHA and would not be allowed on the premises.

37.     The suspension letter was issued in furtherance of the willful and unlawful action to cover up Chairman Greene's improper actions and it falsely

and maliciously advised that Plaintiff's suspension resulted from Plaintiff's
alleged actions in matters undertaken by the PHA's Administrative Board.

38.     Plaintiff's suspension was reported in the Philadelphia Inquirer on
February 6, 2011.

39.     On March 16, 2011, Plaintiff was advised by Audrey Lim, then
Acting Director of Human Resources, that the PHA decided that he should be
separated from his employment.

40.     While each of the aforestated willful and unlawful actions were
taken by PHA in furtherance of its own selfish interests,  Plaintiff was not
afforded an opportunity to have a publicly held due process hearing so he
could clear his name and cure the damage the PHA had done to his reputation.

41.     Thereafter, Plaintiff, through his attorneys, made several requests
both in writing and orally that he be afforded a due process hearing to clear his
name.

42.     Plaintiff's requests for a due process hearing were consistently
denied.

43.     Thereafter, on May 18, 2011, Ms. Lim sent Plaintiff another letter
confirming PHA's initial recommendation that he be separated from his
employment and set forth various false and malicious reasons supporting its
resolution in that regard.

44.     The May 18, 2011 letter also misrepresented that PHA was going to
afford Plaintiff a due process hearing on May 20, 2011.

8

45.     Contrary to Ms. Lim's promise, the May 20, 2011 hearing was simply a private meeting with Ms. Lim and PHA's counsel which precluded Plaintiff from publicly clearing his reputation.[1]

46.     The reasons given for the termination of Plaintiff's employment were pretextual and were disseminated by PHA to third parties, by and through its officers and administrators, to willfully discredit Plaintiff and harm his reputation and place him in a false light before the general public solely to support personal self- interests.

47.     As a result of the aforementioned conduct of PHA, by and through its employees and officers, Plaintiff's professional reputation has been severely damaged and he has been denied numerous employment opportunities based upon the published falsities made possible by the willful and unlawful actions taken by the PHA through its Chairman, Executive Director, Director of Human Resources and complicit employees and agents.

## COUNT I

### 42 U.S.C. § 1983
### (Deprivation of Constitutional Liberty Interest Without Due Process)

48.     Plaintiff incorporates the foregoing and remaining paragraphs in this Amended Complaint as though fully set forth at length herein.

49.     Defendant acted under color of state law with respect to all acts referenced herein.

---

[1] Mr. Pasour's replacement by Ms. Lim was subsequently revealed to have been the result of Ms. Lim being involved in a sexual relationship with Mr. Kelly, evidencing that the demanded public hearing would not have only revealed the false nature of the allegations against Mr. Pasour but also would have brought to light the embarrassing revelation of the Kelly/Lim affair.

50.    As provided in the Constitution of the United States, Plaintiff has a liberty interest in his good reputation.

51.    The aforementioned conduct of Defendant in publishing defamatory comments regarding Plaintiff's conduct, suspending his employment and terminating his employment without affording him a due process hearing has deprived Plaintiff of his liberty interest in his reputation without due process of law.

52.    Defendant PHA is liable for these violations of Plaintiff's Constitutional rights pursuant to 42 U.S.C. § 1983.

53.    As a result of Defendant's conduct, Plaintiff has suffered harm to his reputation, humiliation and severe emotional distress and financial harm in the nature of lost wages and lost employment opportunities.

54.    Defendant's conduct was motivated by an evil motive or intent and/or showed a reckless or callous indifference to Plaintiff's constitutionally protected rights.

**COUNT II**

**DEFAMATION**
**(Libel and Slander)**

55.    Plaintiff incorporates the foregoing and remaining paragraphs in this Amended Complaint as though fully set forth at length herein.

56.    The statements communicated by, directed by and/or participated in by the officers, administrators agents and/or employees of the PHA about Plaintiff were false and were defamatory in that they harmed the reputation of

Plaintiff by lowering him in the estimation of the community and/or deterring third persons from associating or dealing with him.

57.     The above statements stated and/or implied that Plaintiff acted in a way that would be inconsistent with the proper, honest and lawful performance of his job, profession or office, and/or that he has a character that would make him unfit to properly, honestly and lawfully perform his job, profession or office.

58.     The above statements were communicated, directed and/or participated in by the Chairman, Executive Director, agents and employees of Defendant PHA with ill-will and malice towards Plaintiff and with knowledge and/or reckless disregard for their falsity.

59.     By directing the February 4, 2011 suspension and May 27, 2011 termination of Plaintiff's employment after publicly accusing him of engaging in an unlawful conspiracy to conceal the sexual harassment charges and settlements from the Board, Defendant PHA further stated and/or implied that Plaintiff acted in a way that would be inconsistent with the proper, honest and lawful performance of his job, profession, or office and/or that he has a character that would make him unfit to properly, honestly and lawfully perform his job, profession or office and therefore engaged in defamation per se.

60.     Plaintiff's suspension and termination were recommended and imposed with ill-will and malice towards him with knowledge and/or reckless disregard for the harm to Plaintiff's reputation that would, and did result.

61.    Moreover, Plaintiff has been compelled to repeat the conspiracy allegations made against him as well as the circumstances surrounding his suspension and termination to potential employers.

62.    As a result of Defendant's conduct, Plaintiff suffered and continues to suffer harm to his reputation, humiliation, severe emotional distress and financial harm in the nature of lost wages and employment opportunities.

63.    Defendant PHA is vicariously liable for the actions, conduct and statements of the PHA employee(s) and/or agent(s) who published said statements.

64.    Defendant's conduct in communicating, directing and/or participating in the above statements was so reckless, wanton, willful and malicious that Defendant should be punished by the assessment of punitive damages.

## COUNT III
## INVASION OF PRIVACY/FALSE LIGHT

65.    Plaintiff incorporates the foregoing and remaining paragraphs in this Complaint as though fully set forth at length herein.

66.    The statements communicated by, directed by and/or participated in by officers, directors and employees of PHA about Plaintiff gave publicity to and placed Plaintiff before the public in a false light.

67.    The publication of such matters would be offensive to a reasonable person, and was highly offensive to Plaintiff.

68.   In giving publicity to the aforementioned matters, Defendant acted with knowledge of the falsity of the matter and/or in reckless disregard of whether it was true or false.

69.   As a result of Defendant's conduct, Plaintiff suffered and continues to suffer harm to his reputation, humiliation, severe emotional distress and financial harm in the nature of lost wages and lost employment opportunities.

70.   Defendant PHA is vicariously liable for the actions, conduct and statements of the PHA employee(s) and/or agent(s) who published said statements.

71.   Defendant's conduct in communicating, directing and/or participating in the above statements was so reckless, wanton, willful and malicious that Defendant should be punished by the assessment of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully requests that this Court:

(a)   Enter a declaratory judgment that the actions of Defendant violated the rights of Plaintiff as secured to him by the applicable state and federal law and the United States Constitution;

(b)   Afford Plaintiff the opportunity to call witnesses and submit evidence regarding the falsity of the allegations made against him;

(c)   Award to Plaintiff past and future damages for loss of income, growth opportunities and all benefits denied him due to the improper and unlawful actions of defendant;

13

(d)    Award to Plaintiff damages in compensation for his emotional distress, humiliation, loss of reputation and status in the community of his peers, and the loss of his ability to provide himself with the rewards of his years of excellence in his chosen profession;

(e)    Award Plaintiff punitive damages;

(f)    Grant to Plaintiff costs, disbursements and reasonable attorneys' fees; and

(g)    Grant to Plaintiff such additional relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/    Alan B. Epstein* [2825]
Alan B. Epstein, Esquire
(Pa. Bar No.02346)
Jennifer Myers Chalal, Esquire
(Pa. Bar No. 77841)
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA  19103
(215) 241-8888

*Attorneys for Plaintiff,*
*Frederick K. Pasour*

Dated:      May 20, 2010

14