# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREDERICK K. PASOUR, : 
: CIVIL ACTION
    Plaintiff, :
:
v. :
:
PHILADELPHIA HOUSING AUTHORITY : NO. 13-2258
:
    Defendants. :

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                                August 7, 2013

Currently pending before the court is the Motion of Defendant Philadelphia Housing Authority to Dismiss Plaintiff Frederick K. Pasour's Amended Complaint. For the following reasons, the Motion is granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit centers around the Pennsylvania Housing Authority ("PHA")'s suspension and termination of Plaintiff Frederick Pasour. The facts, as taken from the Amended Complaint, are as follows. Mr. Pasour was hired by PHA, starting on June 3, 2003, as Counsel. (Am. Compl. ¶ 15.) At the time of his hire, Carl Greene was the Executive Director of PHA. (Id. ¶ 2.) In this position, Mr. Pasour's duties included supervision of labor and employment matters being handled by outside counsel appointed through PHA's legal department, supervision of the PHA's EEO office, and supervision of the worker's compensation program. (Id. ¶ 17.) He was also responsible for providing advice to his supervisors regarding labor and employment matters, and these supervisors were then responsible, in turn, to provide the advice to Mr. Greene, PHA's

Executive Staff, and the Board of Commissioners. (Id.) In 2005, Mr. Pasour's title was changed to Director of Labor and Employment, though his duties remained the same. (Id.) Mr. Pasour's supervisor, Cybil Bryant, left PHA in April 2007, at which point Plaintiff then took on direct responsibility for the enforcement of PHA's sexual harassment policy. (Id. ¶¶ 15, 20.) In February 2008, Mr. Pasour was promoted to Acting General Counsel for Labor and Employment and served as the General Manager of Human Resources. (Id. ¶ 21). His title was formally changed to General Counsel for Labor and Employment in December 2008. (Id. ¶ 22.) His duties primarily remained the same, and he continued to be responsible for supervising and managing the Labor and Employment cases at PHA, supervising the EEO office and the worker's compensation program, and advising management on personnel issues. (Id. ¶ 23.) Mr. Pasour reported directly to Carolyn Carter, who was the Assistant Executive Director of Operations at PHA, and he also reported to Diane Rosenthal, the Assistant Executive Director of Finance and Administration at PHA. (Id.) Mr. Pasour was never subjected to any disciplinary actions during his entire tenure of employment with PHA. (Id. ¶ 26.)

In August of 2010, a series of allegations regarding Carl Greene were broadly reported in the newspapers, television broadcasts, and radio broadcasts. (Id. ¶ 27.) These allegations included reports that a number of former PHA employees made sexual harassment claims against Mr. Greene, and that three of the claims dating back to 2004 were settled by PHA's insurer. (Id. ¶ 28.) Following these reports, John Street, then Chairman of the PHA, accused Mr. Pasour at a public meeting on August 26, 2010, of engaging in an unlawful conspiracy to conceal the sexual harassment charges and settlement from the Board. (Id. ¶ 30.) Mr. Street then allegedly leaked an anonymous investigative report written at his direction and authored in relevant part by him,

2

which accused Mr. Pasour of engaging in a conspiracy to cover up Mr. Greene's sexual harassment accusations. (Id. ¶ 32.) This report appeared in the print and news media on or about September 23, 2010. (Id. ¶ 34.)

Following the dissemination of the investigative report, Mr. Pasour was then replaced in his responsibilities as the head of human resources by Executive Director Michael Kelly. (Id. ¶ 35.) On February 4, 2011, he was informed by Mr. Kelly that he was being suspended from employment with pay, and he would not be allowed on the premises. (Id. ¶ 36.) The suspension was reported by the Philadelphia Inquirer on February 6, 2011. (Id. ¶ 38.) On March 16, 2011, Mr. Pasour was advised by the Acting Director of Human Resources that PHA decided he should be separated from his employment. (Id. ¶ 39.) Mr. Pasour was not given an opportunity to have a publicly-held due process hearing to clear his name, despite making several requests both in writing and orally.

On May 18, 2011, Mr. Pasour was sent another letter confirming PHA's initial recommendation that he be separated from his employment. (Id. ¶ 43.) This letter also misrepresented that PHA was going to afford Plaintiff a due process hearing on May 20, 2011. (Id. ¶ 44.) However, the May 20, 2011 hearing turned out to be a private meeting with Audrey Lim, the Acting Director of Human Resources, and PHA's counsel.

Mr. Pasour brought this action in the Philadelphia County Court of Common Pleas on March 28, 2013. The action was subsequently removed to this Court on April 26, 2013. An Amended Complaint was then filed on May 20, 2013. On May 29, 2013, PHA filed the instant Motion to Dismiss the Amended Complaint. Mr. Pasour filed a Response in Opposition on July 1, and PHA filed a Reply brief on July 10. The Court will now consider the merits of this

Motion.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of

4

complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendant raises various arguments as to why Plaintiff's claims for deprivation of liberty interest in reputation should be dismissed. The Court addresses each claim separately.

### A. Whether Plaintiff's §1983 Claim for Deprivation of Liberty Interest in Reputation Meets the Stigma "Plus" Test

In order to establish a claim for a procedural due process violation pursuant to 42 U.S.C. § 1983, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d

Cir. 2000)). The Supreme Court has held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). When notice and an opportunity to be heard are not provided, a plaintiff may bring a procedural due process claim "for deprivation of a liberty interest in reputation." Hill, 455 F.3d at 236 (citation omitted). To prevail, the plaintiff must demonstrate "a stigma to his reputation plus deprivation of some additional right or interest." Id. (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). This is referred to as the "stigma-plus" test, and in the context of public employment, it "has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)). Notably, the Third Circuit has held that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." Hill, 455 F.3d at 238.

Defendant argues that Plaintiff cannot satisfy either the "stigma" prong of the test or the "plus" prong.

### 1. Plaintiff Has Satisfied the Stigma Test

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements(s) (1) were made publicly and (2) were false." Hill, 455 F.3d at 236. "[N]ot every derogatory statement made about an employee who loses his or her job imposes sufficient stigma to implicate the liberty interest . . . ." O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d Cir.1994). "In order to be considered stigmatizing, the statements must 'call into

6

question plaintiff's good name, reputation, honor, or integrity . . . [or] denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.'"  Sharp v. Pa. Army Nat'l Guard, No. Civ.A.11-1262, 2013 WL 1703583, at *9 (M.D. Pa. Apr. 19, 2013) (citing Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004)).  Statements that allege "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance" are "not sufficiently stigmatizing to implicate a liberty interest." Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012) (citations and internal quotation marks omitted).

PHA argues that Plaintiff cannot sustain a claim because there is no proof that any of the statements alleged in the Amended Complaint were stigmatizing or made publicly.  The allegations and statements include (1) an allegation that "during a public meeting held on August 26, 2010, Chairman Street falsely accused Plaintiff of engaging in an unlawful conspiracy to conceal the sexual harassment charges and settlement from the Board, thereby allegedly failing in his ethical and legal responsibility[,]" and (2) the allegation that "Chairman Street leaked an unauthored investigative report that was written at his direction and authored in relevant part by him which falsely accused Plaintiff of engaging in a conspiracy to cover up Mr. Greene's averred sexual harassment in violation of Plaintiff's legal and ethical responsibilities."  (Am. Compl. ¶¶ 30–32.)  If proven true, these statements certainly call into question Mr. Pasour's reputation and integrity as an employee, threaten his future employment, and go beyond simple "derogatory statements."

Defendant argues in the alternative that these statements are not stigmatizing because they

7

were not made publicly. PHA focuses on a series of letters in which Mr. Pasour learned about the disciplinary procedures initiated against him and eventual termination, and it emphasizes that these letters were private and not made public. Plaintiff, however, correctly notes that the allegations are these statements were made publicly. To wit, Plaintiff alleges that Chairman Street "promulgated these. . . accusations to the newspaper, television, and radio media . . . ." (Id. ¶ 31.) Additionally, Plaintiff states that the allegedly leaked report by Chairman Street appeared in the print and news media on September 23, 2010. (Id. ¶ 34.) If such allegations are proven true, there is no question that the allegedly damaging statements were published.

### 2. Plaintiff Has Satisfied The "Plus" Element

In order to satisfy the "plus" element of the stigma-plus test, a plaintiff must demonstrate deprivation of a property interest that independently enjoys due process protection. Clark v. Falls, 890 F.2d 611, 619 (3d Cir. 1989). This element is typically, though not always, proven when a plaintiff has been discharged in connection with the stigmatizing statements, since an employee holds a property interest in the job that he or she lost. Hill, 455 F.3d at 238.

In the instant matter, Defendant contends that Plaintiff's termination was not close enough in time to the alleged statements to connect them. In doing so, PHA notes that Chairman Street's statements were made in August and September of 2010, whereas Mr. Pasour's suspension and termination were not until February and May 2011, respectively. In response, Plaintiff argues that his replacement as the Head of Human Resources, suspension from employment, and eventual termination demonstrate a continuing course of conduct connecting the termination to the damaging statements made by Chairman Street. The Court is inclined to agree with Plaintiff. If evidence is provided suggesting the Plaintiff's allegations are true, a

8

reasonable jury could infer that Mr. Pasour's eventual termination was the direct result of Chairman Street's statements. Accordingly, the Court finds that Plaintiff has satisfied the "plus" element of the stigma-plus test.[1]

### B. Plaintiff Can Seek Damages For His Deprivation of Liberty Interest in Reputation Claim

Defendant also argues that Plaintiff is not entitled to any monetary damages for his claim, as the exclusive remedy for such a claim is a name-clearing hearing. In arguing such, Defendant contends that, though the Third Circuit Court of Appeals has not specifically ruled that plaintiffs are not entitled to damages in addition to a name-clearing hearing, this Court should follow other courts in this jurisdiction which have awarded only a name-clearing hearing.

This Court addressed this very issue in Greene v. Street, No. Civ.A.10-04529, 2011 WL 2517144, at *6 (E.D. Pa. June 22, 2011).[2] There, we found that the Supreme Court has suggested that, at the very least, nominal damages may be available when a constitutional right is violated. Id.; see also Codd v. Velger, 429 U.S. 624, 631 n.3 (1977) (Brennan, J., dissenting) ("As with any infringement of an intangible constitutional right . . . a jury should be permitted to decide whether to fix and award damages perhaps only nominal for the very denial of a timely due process forum where a stigmatized individual could participate in the process of attempting to clear his name."). As such, we again decline to find that Plaintiff is precluded from receiving

---

[1]Plaintiff also contends that his denial of employment opportunities based on the false statements published by Defendant also satisfies the "plus" element of the stigma-plus test. Because the Court has found that Plaintiff's allegations are sufficient to connect his termination to the alleged statements, we decline to rule on this particular issue.

[2]In its briefing, Defendant recognizes this Court's decision in Greene and notes that it raises the issue in order to preserve the record.

monetary damages for his claim.

### C. Counts II and III For Defamation and False Light/Invasion of Privacy Are Barred By Sovereign Immunity

Defendant also moves to dismiss the remaining state law claims by arguing that PHA is a commonwealth jurisdiction and, as such, is entitled to sovereign immunity. The doctrine of sovereign immunity, codified under Pennsylvania law as 1 Pa.C.S. § 2310, protects the Commonwealth and Commonwealth parties from suit unless the cause of action falls within one of several statutory exceptions, or an individual's conduct falls outside the scope of his employment."[3] Wesley v. Hollis, No. Civ.A.03-3130, 2007 WL 1655483, at *14 (E.D. Pa June 6, 2007) (citing Savage v. Judge, No. Civ.A.05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2006)).

Defendant cites cases which have previously found that PHA is a Commonwealth entity in support of its argument, including City of Philadelphia v. Lead Indusries Ass'n, 994 F.2d 112, 119 (3d Cir. Pa. 1993) and Battle v. Philadelphia Housing Authority, 594 A.2d 769, 771 (Pa. Super. Ct. 1991). Additionally, Defendant cites to Marshall v. Port Authority of Allegheny County, 568 A.2d 931, 934 (Pa. 1990), on which the courts in Lead Industries and Battle relied. In Marshall, the the Pennsylvania Supreme Court found that the Allegheny Port Authority was a Commonwealth Agency based on its enacting statute. In deciding such, the court noted that, "In view of this plain statutory language, it would be impossible to conclude that [the Port Authority]

---

[3]The statutory exceptions to sovereign immunity are as follows: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b).

10

is anything other than an agency of the Commonwealth." Id.

In response, Plaintiff points to Snead v. SPCA, 929 A.2d 1169 (Pa. Super. Ct. 2007), which states that in determining whether an agency is a Commonwealth agency, a court should look at "whether the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state." Id. at 1178 (quoting Gory v. Phila. Hous. Auth., 855 A.2d 669, 677 (Pa. 2004) (footnote omitted)). In Snead, the court found that the Society for the Prevention of Cruelty to Animals was a private not-for-profit organization and not a Commonwealth organization because (1) the Commonwealth had no control over its operations or assets, (2) the SPCA had adopted its own bylaws, (3) the SPCA had managed its own affairs, and (4) the SPCA was not funded by public monies of the Commonwealth. Id. at 1178. Plaintiff asks this Court to reject the reasoning of the courts in Lead Industries, Battle, and Marshall because it does not consider some of the factors listed in Snead, such as whether the agency was funded by Commonwealth monies or for what purpose the agency was initially founded.

The Court, however, will not reject the authoritative holdings of the Pennsylvania Supreme Court and Third Circuit employed in Lead Industries, Battle, and Marshall. Because these courts have previously decided that PHA (and the similarly situated Port Authority) were Commonwealth agencies for the purposes of sovereign immunity, this Court must find similarly.[4]

## IV.  CONCLUSION

---

[4] In a final effort to distinguish Lead Indus. and Marshall, Plaintiff cites James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority, 855 A.2d 669 (Pa. 2004). In Gory, the court found that Marshall did not overrule an earlier decision, T & R Painting Co. v. Philadelphia Housing Authority, 353 A.2d 800 (Pa. 1976), which found that PHA was a local agency for jurisdictional purposes only. In doing so, however, the Pennsylvania Supreme Court did not negate the finding or logic used in Marshall in terms of a sovereign immunity analysis. Accordingly, we do not give weight to Gory's finding solely on the issue of jurisdiction.

11

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. Because Plaintiff has successfully alleged facts which, if proven through discovery, could satisfy the "stigma-plus" test and lead a jury to find that Mr. Pasour has suffered a deprivation of liberty interest in his reputation, Defendant's Motion must fail. However, because Defendants have demonstrated that PHA is a Commonwealth agency for purposes of sovereign immunity, its Motion with regard to Counts II and III for defamation and invasion of privacy/false light is granted.

An appropriate Order follows.